UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN MCGUFFEY III,

         Plaintiff,         Case No. 1:11-cv-767

v.         Honorable Janet T. Neff

ANN EESLEY et al.,

         Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Berghuis, Meyers, Steward, Peak and Barnette. The Court will order service of the complaint on Defendant Eesley solely with respect to the allegations regarding her conduct at the Earnest C. Brooks and West Shoreline correctional facilities.

**Discussion**

    I.       Factual allegations

Plaintiff presently is incarcerated at the Pugsley Correctional Facility. He complains of actions occurring at that facility, at the Earnest C. Brooks Correctional Facility and at the West Shoreline Correctional Facility. He sues the following current and former employees of the Earnest C. Brooks and the West Shoreline facilities: Dr. Ann Eesley, a G.E.D. instructor; Principal (unknown) Peak; Warden (unknown) Berghuis; Inspector (unknown) Meyers; Inspector (unknown) Steward; and Principal (unknown) Barnette.[1]

According to the complaint, from 2004 until August of 2010, Dr. Eesley "sexually harassed, orally sodomized, humiliated, threatened, sexually assaulted, and coerced Plaintiff." (Compl. ¶ 1, docket #1.) Plaintiff was assigned to be a tutor in Dr. Eesley's classroom beginning in 2004. Over time, he began to assist Eesley with her personal affairs and professional difficulties. Easley disclosed to Plaintiff personal details regarding her family and her health. She also asked Plaintiff personal questions about his family, his past, and his personal relationships. Eesley began to find reasons for her and Plaintiff to be alone. She would call him off the yard or to the unit where she was working, even when there was no reason for him to be there. On some occasions, the conversations became "sexually intimate" and Eesley would attempt to "hug, kiss or fondle" Plaintiff. (Compl. ¶ 4.) Eesley expressed to Plaintiff her loneliness and her fondness for Plaintiff. On one occasion, when Eesley and Plaintiff were alone in class, she asked Plaintiff to move some file cabinets in a storage room at the back of the classroom. Inside the storage room, she attempted

---

[1] Defendants Meyers, Steward and Barnette are identified in the complaint as employees of the West Shoreline Correctional Facility. The other Defendants are identified as employees of both facilities. (Compl., docket #1, Page ID##2-3.)

to "kiss and fondle" Plaintiff, but he held her back because he did not want to risk being caught. (Compl. ¶ 5.)

After that time, Eesley began giving Plaintiff various gifts as well as her personal phone numbers. In addition, she would have Plaintiff sit close to her so that she could "touch [Plaintiff] sexually without being seen by the students or other tutors." (Compl. ¶ 6.) On one occasion, a student in the class saw what was happening and wrote a kite to the administration. Plaintiff learned about the kite when Eesley told Plaintiff that Defendant Peak, the school principal, had spoken with Eesley about it. Eesley told Plaintiff to "talk to the other prisoner before he made trouble." (*Id.* at ¶ 7.)

On another occasion, Plaintiff was helping to put classroom materials away when Eesley cornered him in the storage room. She put her hands on his crotch, closed the door, unbuttoned his pants, removed his penis, and proceeded to "orally sodomize[]" Plaintiff. (Compl. ¶ 8.) After a few minutes, Plaintiff panicked and moved away, telling Eesley that he did not want to be accused of criminal sexual conduct. Eesley threatened Plaintiff, telling him that he was "either going to do what she said or get used to being in prison." (*Id.*) Plaintiff threatened to write a grievance but she told him that no one would believe him and she would say that he was the one who made advances on her. She said that he would be charged and transferred to a higher level. After that day, Eesley continued to "touch, kiss, fondle, and perform oral sex" on Plaintiff until he was transferred to the West Shoreline Correctional Facility across the street. (*Id.*)

Plaintiff kept a journal of the dates and times of what was occurring until he was "shaken down" in his unit and an officer almost found his notes. (Compl. ¶ 9.) He hid the notes inside a book until he was transferred to West Shoreline, where he was "shaken down" by Officer

Foster. Foster confiscated the book in which the notes were hidden and the book ultimately went missing.

During the time of the events of the complaint, Eesley had contact with Plaintiff's family. Whenever she became "frustrated" with Plaintiff, she would tell him that "if [Plaintiff] wanted to be with [his] family [he] had better get in line or prepare [him]self to do all the time the judge gave [him]." (Compl. ¶ 10.)

At the West Shoreline facility, Eesley would call Plaintiff to sit with her when she was on library duty. She would try to "hug, kiss, or fondle" Plaintiff when she felt it was safe to do so. (Compl. ¶ 15.) The more Plaintiff resisted, the more "upset and frustrated" she became. (*Id.*) On one occasion, Corrections Officer Crofot witnessed Eesley making threats to Plaintiff. Eesley yelled at Plaintiff and told him that she had spoken with Classification Director Mack and Principal Barnette about Plaintiff. Afterwards, Crofot told Plaintiff to "be careful" and to "be sure to write everything down that had happened." (*Id.* at ¶ 16.)

Plaintiff spoke with Corrections Officer Berry about what was happening, and Berry directed Plaintiff to Inspector Meyers. Plaintiff told Defendant Meyers the details of what had happened and Meyers asked Plaintiff why he had not come forward sooner. Plaintiff mentioned kites that he had written to Meyers and other prison officials, including Inspector Steward, Classification Director Mack, the prison chaplain, and Principal Barnette, but Plaintiff indicated that no action had been taken in response. Meyers admitted that he remembered the kite. Plaintiff told Meyers how he had been transferred to West Shoreline, but that Eesley had ended up there as well. Plaintiff also indicated that he had been transferred to "JCS and Coldwater" but then was returned

to West Shoreline where Eesley was still working. (Compl. ¶ 17.) Plaintiff also told Meyers how he had been assigned to another teacher, but Eesley had the detail changed.

Meyers "immediately" had Plaintiff removed from Eesley's classroom and called the Michigan State Police. (Compl. ¶ 17.) Plaintiff gave a statement to the police and wrote a complaint but he never received a response. Eesley was later removed from her classroom and her position.

The rest of the facts stated in the complaint are listed under a section heading titled "Retaliation." (*See* Compl. at Page ID#8.) On June 23, 2011, Plaintiff was transferred from the West Shoreline facility to the Pugsley Correctional Facility. Upon arrival, his typewriter and television were damaged. The next day he was "verbally harassed, humiliated and threatened by the property room officer." (Compl. ¶ 18.) Plaintiff was then "verbally harassed, humiliated and accused of lying by the ARUM for reporting the previous events." (*Id.* at ¶ 19.)

Plaintiff was given a misconduct for refusing to return to the compound where he feared he would face another altercation with the property room officer. While he was at the control center, Plaintiff's property was opened outside of his presence and some of his "belongings were removed without any documentation." (*Id.* at ¶ 19.) Finally, a "staff employee" initiated and filed a special offender notice form against Plaintiff without any reason for doing so. (*Id.* at ¶ 20.)

As relief, Plaintiff seeks compensatory damages from Defendant Eesley for the psychological and emotional injuries that he has sustained as a result of her conduct. Plaintiff also seeks punitive damages "against all of the defendants" for the "retaliatory actions" perpetrated against him. (Compl. at Page ID#10.)

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). For purposes of analyzing Plaintiff's claims, the Court will address Plaintiff's allegations regarding the conduct at the Earnest C. Brooks and the West Shoreline facilities separately from the allegations regarding conduct at the Pugsley Correctional Facility. The conduct at Pugsley involves different individuals and appears to be unrelated to the conduct at the other facilities.

### A. Conduct at the Earnest C. Brooks and West Shoreline facilities

Plaintiff does not clearly specify the constitutional rights at issue in any of his § 1983 claims; however, Plaintiff's allegations appear to implicate the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. To prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Courts have recognized that sexual assaults on prisoners by prison officials may violate the Eighth Amendment's prohibition on cruel and unusual punishment.

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted); *see also Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (noting a prisoner's "constitutional right to be free from deliberate indifference to assault and sexual abuse").

### 1.     Defendant Eesley

Plaintiff alleges that Defendant Eesley repeatedly sexually abused him while he was housed at the Earnest C. Brook and West Shoreline facilities. The Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Eesley.

### 2.     Defendant Berghuis

Plaintiff alleges that Defendant Berghuis is the current warden of the Earnest C. Brooks and West Shoreline correctional facilities. The Eighth Amendment directs prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that another individual would cause plaintiff serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

It may be that Plaintiff sues Defendant Berghuis on a theory that she failed to protect Plaintiff from the abuse by Eesley. It is impossible to discern why Berghuis is named as a Defendant, however, because she is not mentioned at all in the body of the complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). By failing to allege any conduct by Berghuis, Plaintiff's allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). *See Iqbal*, 129 S. Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, Berghuis may not be held liable for the conduct of other officials under a theory of respondeat superior or vicarious liability. *See Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th

Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). In short, Plaintiff fails to state a claim against Defendant Berghuis because he fails to allege that she engaged in any active unconstitutional behavior.

3. <u>Defendants Meyers, Steward, Barnette and Peak</u>

Defendants Meyers and Steward are prison inspectors, Defendant Barnette was the school principal at the West Shoreline facility, and Defendant Peak was the school principal at the Earnest C. Brooks and West Shoreline facilities. Plaintiff alleges that Meyers, Steward and Barnette received kites from Plaintiff. Though the complaint does not specify any details regarding the kites, the kites presumably were related to Defendant Eesley's conduct. Plaintiff alleges that no action was taken in response to the kites until after Plaintiff spoke with Meyers. Plaintiff also alleges that Peak received a kite from another prisoner regarding Eesley's conduct toward Plaintiff, and Peak apparently spoke with Eesley about it. The foregoing allegations are insufficient to state an Eighth Amendment claim against Defendants Meyers, Steward, Barnette or Peak.

Generally, a prison official does not engage in active unconstitutional behavior by failing to act upon information received about the conduct of other officials, even where that information is contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To the extent Plaintiff claims that Defendants were deliberately indifferent to a substantial risk of harm to him, the complaint provides no allegations from which to make such an inference. *See Iqbal*, 129 S. Ct. at 1950 (noting that a complaint does not satisfy the requirements of Rule 8 "where

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"). The most one can infer from the complaint is that, at some point in time, Defendants learned some unspecified information regarding Eesley's conduct toward Plaintiff. The complaint, however, is devoid of allegations from which to infer that Defendants Meyers, Steward, Barnette or Peak learned of, and acted with deliberate indifference toward a substantial risk of serious harm to Plaintiff. To the contrary, the complaint alleges that Peak took corrective action by speaking with Eesley, and that Meyers (after asking Plaintiff why he had not come forward sooner) took immediate corrective action by separating Plaintiff from Eesley. The foregoing allegations undermine any claim that Peak or Meyers were deliberately indifferent to a substantial risk that Eesley would harm Plaintiff.

Moreover, as indicated with respect to Defendant Berghuis, *supra*, none of Defendants Meyers, Steward, Peak or Barnette can be held liable for the conduct of other officials under a theory of vicarious liability or respondeat superior. *See Iqbal*, 129 S. Ct. at 1948; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495 (6th Cir. 2009). Therefore, the Court concludes that Plaintiff fails to state a claim against Defendants Meyers, Steward, Peak or Barnette.

### B.     Conduct at the Pugsley Correctional Facility

Plaintiff alleges that he was harassed by various officials at the Pugsley Correctional Facility, including the property-room manager, an unidentified Assistant Resident Unit Manager (ARUM), and an unidentified staff employee, in retaliation for reporting misconduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claims regarding the conduct occurring at the Pugsley Correctional Facility will be dismissed because none of the individuals involved in the relevant conduct are named as Defendants. Indeed, the complaint alleges that all of the named Defendants were employees of other facilities. There are no allegations tying the named Defendants to the allegedly retaliatory conduct at the Pugsley facility. Thus, Plaintiff's allegations of retaliatory conduct at the Pugsley Correctional Facility are insufficient to state a claim against the named Defendants. *See Iqbal*, 129 S. Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Twombly*, 550 U.S. at 544

(holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).

Even if Defendants had supervisory authority or control over the officials at the Pugsley Correctional Facility, Plaintiff cannot bring a § 1983 cause of action against Defendants under a theory of vicarious liability or respondeat superior. *See* Section II.A.1, *supra*. Therefore, all claims regarding conduct at the Pugsley Correctional Facility will be dismissed against all Defendants for failure to state a claim.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Plaintiff's claims regarding the allegedly retaliatory conduct occurring at the Pugsley Correctional Facility will be dismissed against all Defendants for failure to state a claim. Furthermore, all other claims against Defendants Berghuis, Meyers, Steward, Peak and Barnette will be dismissed for failure to state a claim. The Court will order service of the complaint on Defendant Eesley solely with respect to the allegations regarding her conduct at the Earnest C. Brooks and West Shoreline correctional facilities.

An Order consistent with this Opinion will be entered.


Dated: __August 23, 2011__               /s/ Janet T. Neff            
                                         Janet T. Neff
                                         United States District Judge