UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN McGUFFEY,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                    Case No. 1:11-CV-767

ANNE EESLEY, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Disposition. (Dkt. #22). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **denied**.

## BACKGROUND

Plaintiff presently is incarcerated at the Pugsley Correctional Facility. The alleged events giving rise to this action occurred at the Pugsley facility as well as the Earnest C. Brooks and West Shoreline Correctional Facilities. Plaintiff has sued several individuals, including Dr. Ann Eesley, a former G.E.D. instructor employed by the Michigan Department of Corrections. The following allegations are contained in Plaintiff's complaint. (Dkt. #1).

From 2004 until August of 2010, Dr. Eesley "sexually harassed, orally sodomized, humiliated, threatened, sexually assaulted, and coerced Plaintiff." Beginning in 2004, Plaintiff was assigned to be a tutor in Dr. Eesley's classroom. Over time, Plaintiff began to assist Eesley with her

"personal affairs as well as with any difficulties she experienced professionally." Easley disclosed to Plaintiff personal details regarding her family and her health. She also asked Plaintiff personal questions about his family, his past, and his personal relationships. Eesley then began to find reasons for her and Plaintiff to be alone. She would summon Plaintiff from the yard or to the unit where she was working, even when there was no reason for him to be there. On some occasions, the conversations became "sexually intimate" and Eesley would attempt to "hug, kiss or fondle" Plaintiff. Eesley expressed to Plaintiff her loneliness as well as her fondness for Plaintiff. On one occasion, when Eesley and Plaintiff were alone, she asked Plaintiff to move some file cabinets to a storage room at the back of the classroom. Once inside the storage room, she attempted to "kiss and fondle" Plaintiff, but he held her back because he did not want to risk being caught.

Eesley then began giving Plaintiff various gifts as well as her personal phone number. In addition, she would instruct Plaintiff to sit close to her so that she could "touch [Plaintiff] sexually without being seen by the students or other tutors." On one occasion, a student in the class saw what was happening and wrote a kite to the administration. Plaintiff learned about the kite when Eesley told Plaintiff that Defendant Peak, the school principal, had spoken with Eesley about it. Eesley told Plaintiff to "talk to the other prisoner before he made trouble."

On another occasion, Plaintiff was helping to put classroom materials away when Eesley cornered him in the storage room. She put her hands on his crotch, closed the door, unbuttoned his pants, removed his penis, and proceeded to "orally sodomize[]" Plaintiff. After a few minutes, Plaintiff panicked and moved away, telling Eesley that he did not want to be accused of criminal sexual conduct. Eesley responded by threatening Plaintiff, telling him that he was "either going to do what she said or get used to being in prison." Plaintiff threatened to write a grievance but she told him that no one would

believe him and she would say that he was the one who made advances on her. She said that he would be charged and transferred to a higher level. After that day, Eesley continued to "touch, kiss, fondle, and perform oral sex" on Plaintiff until he was transferred to the West Shoreline Correctional Facility across the street.

At the West Shoreline facility, Eesley would call Plaintiff to sit with her when she was on library duty. She would try to "hug, kiss, or fondle" Plaintiff when she felt it was safe to do so. The more Plaintiff resisted, the more "upset and frustrated" she became. On one occasion, Corrections Officer Crofot witnessed Eesley making threats to Plaintiff. Eesley yelled at Plaintiff and told him that she had spoken with Classification Director Mack and Principal Barnette about Plaintiff. Afterwards, Crofot told Plaintiff to "be careful" and to "be sure to write everything down that had happened."

Plaintiff spoke with Corrections Officer Berry about what was happening, and Berry directed Plaintiff to Inspector Meyers. Plaintiff told Defendant Meyers the details of what had happened and Meyers asked Plaintiff why he had not come forward sooner. Plaintiff mentioned kites that he had written to Meyers and other prison officials, including Inspector Steward, Classification Director Mack, the prison chaplain, and Principal Barnette, but Plaintiff indicated that no action had been taken in response. Meyers admitted that he remembered receiving a kite. Plaintiff told Meyers how he had been transferred to West Shoreline, but that Eesley had ended up there as well. Plaintiff also indicated that he had been transferred to "JCS and Coldwater" but then was returned to West Shoreline where Eesley was still working. Plaintiff also told Meyers how he had been assigned to another teacher, but Eesley had the detail changed. Meyers immediately had Plaintiff removed from Eesley's classroom and called the Michigan State Police. Plaintiff gave a statement to the police and wrote a complaint but he never received a response. Eesley was later removed from her classroom and her position.

Plaintiff's allegations against Defendant Eesley implicate his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff has also alleged that he was subjected to unlawful retaliation, but all such claims have since been dismissed. (Dkt. #5). The only claims remaining in this matter are Plaintiff's claims against Defendant Eesley "solely with respect to the allegations regarding her conduct at the Earnest C. Brooks and West Shoreline correctional facilities." (Dkt. #5). Defendant Eesley now moves for dismissal of Plaintiff's claims.[1]

## ANALYSIS

**I.        Jurisdiction**

Defendant first asserts that she is entitled to relief because Plaintiff "has failed to state the grounds for jurisdiction." Defendant asserts that she cannot defend against Plaintiff's claims unless she is first "reasonably informed of the alleged statutory authority for [this] action." On August 23, 2011, the Honorable Janet T. Neff issued an opinion dismissing many of the claims in Plaintiff's complaint. In so doing, Judge Neff concluded that Plaintiff was asserting his Eighth Amendment claims "pursuant to 42 U.S.C. § 1983." As the United States Supreme Court has observed, "federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983." *Haywood v. Drown*, 556 U.S. 729, 731 (2009); *see also*, 28 U.S.C. § 1331 (United States District Courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). As the Court has already concluded that jurisdiction in this Court is proper, this particular argument is rejected.

---

[1] While Defendant's motion is styled as a motion for "summary disposition," Defendant makes no reference to Federal Rule of Civil Procedure 56. Rather, Defendant is seeking relief under Federal Rule of Civil Procedure 12(b)(6).

**II.        Exhaustion**

Defendant next asserts that she is entitled to relief on the ground that Plaintiff has failed to sufficiently plead in his complaint that he has properly exhausted his administrative remedies. The United States Supreme Court, however, has clearly held that prisoners are not required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense" which the defendant bears the burden of establishing. *Id.* As Defendant offers no evidence that Plaintiff has failed to exhaust his administrative remedies, this argument is rejected.

**III.        Failure to State a Claim**

Finally, Defendant asserts that she is entitled to relief because the allegations in Plaintiff's complaint fail to state a claim upon which relief may be granted. A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

As the Supreme Court recently stated, a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Defendant first argues that Plaintiff's allegations, even if true, "can only be characterized as a consensual or mutual relationship." Plaintiff has alleged that Defendant threatened to falsely charge him with committing sexual assault if he did not comply with her sexual demands. Plaintiff has further alleged that he complied with Defendant's demands because he feared that Defendant would carry out her threat. Defendant's argument that such allegations "can only" be characterized as describing a consensual relationship is rejected as frivolous and nonsensical.

Defendant next asserts that she is entitled to relief because Plaintiff has failed to present evidence that her alleged actions were "unwelcome." Defendant has moved for relief on the ground that Plaintiff's allegations fail to state a claim on which relief may be granted. Whether Plaintiff has submitted any evidence is irrelevant to such argument which focuses solely on the allegations in Plaintiff's complaint and any attachments thereto. This argument is likewise rejected.

Finally, Defendant argues that she is entitled to relief because Plaintiff has failed to allege that she "acted with a sufficiently culpable state of mind." Judge Neff has already resolved this particular argument, finding that Plaintiff's allegations "are sufficient to state an Eighth Amendment claim against Defendant Eesley." Implicit in this conclusion is that Plaintiff's allegations sufficiently alleged that Defendant acted with a sufficiently culpable state of mind. This argument is, therefore, rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Disposition, (dkt. #22), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: October 10, 2012

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge